IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

BRIAN J. PANETTA,

        Plaintiff,

v.        CIVIL ACTION NO. 2:10-cv-00278

CHESAPEAKE ENERGY CORPORATION, et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is the defendants' Motion to Compel Arbitration and to Dismiss this Case or, in the Alternative, to Stay this Action Pending Arbitration [Docket 9]. The motion is **GRANTED**. This case is **STAYED** pending arbitration.

**I. Background**

    **A. Facts**

The plaintiff, Brian Panetta, was a geologist employed by defendant Chesapeake Appalachia, LLC from March 13, 2006, until April 21, 2009.[1] On October 9, 2006, nearly six months after he had started working at Chesapeake, Panetta signed an employment agreement with Chesapeake (the "Agreement").[2] The Agreement contains an arbitration provision. That provision provides, in pertinent part, "Any disputes, claims or controversies between [Chesapeake] and [Panetta] including,

---

[1] Chesapeake Appalachia is a subsidiary of defendant Chesapeake Energy Corporation. Both entities are Oklahoma corporations.

[2] The Agreement is found at Docket 9, Exhibit A.

but not limited to those arising out of or related to this Agreement or out of the parties' employment relationship, shall be settled by arbitration as provided herein." Agreement 10.

In March 2009, Chesapeake restructured its West Virginia workforce. It offered its West Virginia employees, including Panetta, the opportunity to relocate to Oklahoma, or to accept a severance package and have their employment terminated. Panetta accepted the offer to transfer to Oklahoma, and he purportedly entered into a transfer contract with Chesapeake. Panetta asserts that the transfer contract obligated Chesapeake to purchase his West Virginia house from him. Panetta maintains that Chesapeake subsequently refused to purchase his house, and, as a result, Panetta claims that he could not afford to follow through with the transfer. Panetta's employment was subsequently terminated.

### B. Procedural History

On February 10, 2010, Panetta sued Chesapeake Energy Corporation and Chesapeake Appalachia, LLC (collectively, "the defendants") in the Circuit Court of Kanawha County, West Virginia. His Complaint asserts a single claim, for fraud based on Chesapeake's purported refusal to buy Panetta's house. He alleges that Chesapeake "intentionally misrepresented facts to [him] to avoid having to pay him severance or to pay his relocation package." (Compl. ¶ 17.)

The defendants removed the case to federal court on March 9, 2010, citing diversity jurisdiction. They filed their Motion to Dismiss on April 6, 2010. Panetta responded on April 20, 2010.

## II. Discussion

The defendants maintain that Panetta's claim falls under the arbitration clause of the Agreement. Therefore, under the Federal Arbitration Act (the "FAA"), they maintain, this action

must be stayed or dismissed so that the case can be arbitrated. Panetta asserts that his claim does not fall under the arbitration clause of the Agreement. And, even if it does, Panetta argues, the Agreement was voidable for several reasons and that arbitration is not required.

The FAA provides in pertinent part,

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. This language (with narrow exceptions that are inapplicable here) applies to all employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001). "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.'" *Adkins v. Labor Ready*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3). Furthermore, "any doubts concerning the scope of arbitrable issues shall be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

While state law controls issues of "the validity, revocability, or enforceability of contracts generally," *Perry v. Thomas*, 482 U.S. 483, 493 n. 9 (1987), the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24. The FAA constitutes "a congressional declaration of liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Id.*

"In the Fourth Circuit, a litigant can compel arbitration under the FAA if he can demonstrate (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect, or refusal of the defendant to arbitrate the dispute." *Labor Ready*, 303 F.3d at 500-01 (internal quotation marks omitted). In considering these factors, a district court must remain "mindful of the clear federal directive in support of arbitration." *Id.* at 500 (internal quotation marks omitted).

Whether this case should be stayed or dismissed in this case turns on the third factor: whether the arbitration clause is valid and covers this dispute. Panetta challenges the application of the arbitration provision on four grounds. First, he argues that this dispute is not covered by the Agreement. Second, Panetta argues that the Agreement is unenforceable because he entered into it under duress. Third, he asserts that the Agreement is unenforceable because it is unconscionable. And fourth, Panetta maintains that this dispute is not governed by the FAA because it does not relate to interstate commerce. I will address each of Panetta's arguments in turn.

First, Panetta maintains that his claims against the defendants "arise[] from a breach of a relocation contract and breach of a severance package." (Resp. Mot. Stay or Dismiss 6.) "Such contracts," Panetta contends, "were not contemplated or mentioned in the 'Employment Agreement.'" (*Id.*) This contention lacks merit. The arbitration provision states that "*[a]ny* disputes, claims or controversies between [Chesapeake] and [Panetta] *including, but not limited to those arising out of or related to this Agreement or out of the parties' employment relationship, shall be settled by arbitration as provided herein.*" The clause is broadly written and covers "any dispute"

between Panetta and Chesapeake. This is a dispute between Chesapeake and Panetta regarding their employment relationship, and the arbitration clause clearly applies.

Second, Panetta was not under duress when he entered into the Agreement. Duress may be asserted to invalidate arbitration agreements. *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). In West Virginia, duress occurs when "the plaintiff is forced into a transaction as a result of unlawful threats or wrongful, oppressive, or unconscionable conduct on the part of the defendant which leaves the plaintiff no reasonable alternative but to acquiesce, the plaintiff may void the transaction and recover any economic loss." *Berardi v. Meadowbrook Mall Co.*, 572 S.E.2d 900, 905 (W. Va. 2002) (internal quotation marks omitted). But "to establish economic duress, in addition to their own statements, the plaintiffs must produce objective evidence of their duress. The defense of economic duress does not turn only upon the subjective state of mind of the plaintiffs, but it must be reasonable in light of the objective facts presented." *Id.* at 906 (internal quotation marks omitted).

Here, Panetta's only evidence of duress is that he was asked to sign the employment agreement several months after he had started work at Chesapeake. He contends that this constitutes duress because if he had not signed the Agreement he would have been terminated. This is not duress. Whether or not Panetta was asked to sign the contract before he started working at Chesapeake or afterward, his choice was the same. He could choose to sign the contract and work for Chesapeake, or choose not to sign the contract and not work there. While Panetta certainly faced a hard choice, hard choices standing alone do not constitute duress. Furthermore there was simply no "unlawful threats or wrongful, oppressive, or unconscionable conduct." Panetta's claim of duress is therefore not a valid ground for voiding the Agreement.

Third, Panetta argues that the arbitration clause is invalid because it is unconscionable. Unconscionability in West Virginia requires the party challenging the contract to show that he had "gross inadequacy in bargaining power" and that the contract contained "terms unreasonably favorable to the stronger party." *Troy Mining Co. v. Itmann Coal Co.*, 346 S.E.2d 749, 753 (W. Va. 1986). Furthermore, whether to find "that the transaction was flawed . . . depends on the existence of unfair terms in the contract. A litigant who complains that he was forced to enter into a fair agreement will find no relief on grounds of unconscionability." *Arnold v. United Cos. Lending Corp.*, 511 S.E.2d 854, 860-61 (W. Va. 1998). "A determination of unconscionability must focus on the relative positions of the parties, the adequacy of the bargaining position, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract." *State ex rel. Saylor v. Wilkes*, 613 S.E.2d 914, 922 (W. Va. 2005) (internal quotation marks and alterations omitted). Although there was likely an imbalance in bargaining power in favor of Chesapeake, and although Panetta signed the agreement several months after he began working at Chesapeake, Panetta has failed to identify any unreasonable terms in the arbitration provision. Therefore, neither the Agreement nor its arbitration provision is unconscionable.

Furthermore, Panetta's argument that the arbitration clause is unconscionable "because [Chesapeake] retain[ed] the right to file suit for any violation of any covenant of the agreement in any court . . . for purposes of obtaining . . . equitable relief" to enforce the agreement is likewise meritless. *Cf. Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991) ("[B]y agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." (internal quotation marks and alterations omitted)). This is not a situation where an employee is bound by an agreement

but his employer is not.  *Cf.  Walker v.  Ryan's Family Steak Houses, Inc.*, 400 F.3d 370 (6th Cir. 2005).  Under the Agreement, both parties are bound to arbitration.

Finally, Panetta's argues that this arbitration clause is not governed by the FAA because it does not relate to interstate commerce.  The interstate commerce provision of the FAA is interpreted to the full extent of Congress' Commerce Clause power.  *Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265 (1995).  The Commerce Clause allows for federal regulation of purely local economic activities so long as those activities, viewed in the aggregate, substantially affect interstate commerce.  *Gonzales v.  Raich*, 545 U.S. 1, 17-18 (2005).   Even if this was a purely intrastate activity, as Panetta suggests, employment relationships, viewed in the aggregate certainly substantially affect interstate commerce.  Therefore, the Agreement was a "transaction involving commerce" and its arbitration provision falls within the ambit of the FAA.

### III.  Conclusion

The defendants' Motion [Docket 9] is **GRANTED**.  The court **DIRECTS** the Clerk to stay this case and place it on the inactive docket.  The court further **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

                                       ENTER:     May 12, 2010

                                       Joseph R. Goodwin, Chief Judge